UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Northern Metals, LLC, | Court File No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Jamie Held, | |
| Defendant. | |

Plaintiff Northern Metals, LLC ("Northern Metals" or "Plaintiff") alleges its complaint against Defendant Jamie Held ("Held" or "Defendant") as follows:

### The Parties

1.     Plaintiff Northern Metals is a limited liability company incorporated in Delaware with its principal place of business in Minneapolis, Minnesota.

2.     Defendant Jamie Held is an individual who resides at 10 Rhapsody Bend Drive, The Woodlands, Texas 77382.

### Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332(a) because it involves citizens of different states and the total amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.     Venue is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events and/or omissions giving rise to Northern Metals' claims occurred in this judicial district.

## Factual Allegations

5.      Northern Metals was formed on January 25, 2006 and is in the business of consumer and industrial metal scrap recycling.

6.      Held was the Chief Operating Officer ("COO") of Northern Metals (previously Great Northern Metals, LLC) effective January 26, 2006 through when he terminated his employment with Northern Metals on June 29, 2007.

7.      As the COO of Northern Metals, Held was responsible for running the day-to-day business of Northern Metals.

8.      On February 14, 2006, Held was elected as a manager of Northern Metals, making him responsible for Northern Metals' governance.

9.      As an officer and manager of Northern Metals, Held owed certain fiduciary duties to Northern Metals, including the duties of loyalty, care, candor and good faith.

10.     Upon information and belief, in or around January, 2006, Held and Northern Metals became aware of an opportunity to purchase American Iron & Steel Company ("American Iron").

11.     Thereafter, officers of Northern Metals negotiated with officers of American Iron for the sale of American Iron to Northern Metals. Held was one of the officers representing Northern Metals in its negotiations with American Iron.

12.     Mindy Isaacs and Rhea Isaacs were directors, officers, shareholders and employees of American Iron during the time of the negotiations of the sale of American Iron to Northern Metals. Joel Waller ("Waller") acted as the chief negotiator for Mindy and Rhea Isaacs, and the other shareholders of American Iron, in connection with the sale of American Iron to Northern Metals.

2

13.     Mindy and Rhea Isaacs informed Held during the negotiations of the sale of American Iron to Northern Metals that they wished to remain employed by American Iron after its sale to Northern Metals.

14.     During the negotiations of the sale of American Iron to Northern Metals, Held told Waller, Mindy Isaacs, and Rhea Isaacs that following the sale of American Iron, Mindy Isaacs would continue to be employed by American Iron for as long as she wished for up to a period of two years, with the same compensation and benefits as she currently had.  Held further said that Northern Metals intended to provide continued employment for Rhea Isaacs at American Iron for an equivalent period as Mindy Isaacs, unless Rhea Isaacs chose to leave earlier.

15.     On October 16, 2006, Northern Metals purchased 48% of the shares of American Iron in a Purchase Option Agreement.  European Metal Recycling, Ltd ("EMR"), through subsidiaries, financed the purchase of the initial 48% of the shares of American Iron by Northern Metals.  Northern Metals purchased the remaining shares of American Iron on January 31, 2007.  On January 31, 2007, Northern Metals became the sole owner and shareholder of American Iron.

16.     The October 16, 2006 Purchase Option Agreement providing for the sale of the remaining portion of American Iron to Northern Metals does not include any provisions or agreements regarding the employment or continued employment of Mindy or Rhea Isaacs by American Iron or Northern Metals.

17.     At the closing of the sale of the remaining portion of American Iron to Northern Metals on January 31, 2007, Held told Waller that there would be a continuation of employment for Mindy Isaacs by American Iron for as long as she wished, up to two years.  Held

3

further told Waller that there would be a continuation of employment for Rhea Isaacs similar to what was offered to Mindy Isaacs.

18.     Held told Waller that EMR might feel uneasy about the purchase of American Iron if Mindy and Rhea Isaacs' continued employment was explicitly included in the closing documents.  Held told Waller that Mindy and Rhea Isaacs would be given separate employment contracts following the closing.

19.     Held did not have authority from Northern Metals to make any promises of continued employment to Mindy or Rhea Isaacs following the sale of American Iron to Northern Metals.

20.     Upon information and belief, Held did not tell any other officers, managers or members of Northern Metals or EMR that he promised continued employment to Mindy and Rhea Isaacs following the sale of American Iron to Northern Metals.

21.     Any promises of continued employment to any employees of American Iron were material facts by Northern Metals in connection with Northern Metals' purchase of American Iron.

22.     Northern Metals only learned of Held's promise of continued employment to Mindy and Rhea Isaacs after the closing of the sale of the remaining portion of American Iron.

23.     Mindy and Rhea Isaacs were terminated from American Iron effective January 31, 2008.  Mindy and Rhea Isaacs contend that Held promised them they would be employed by American Iron until January 31, 2009.

24.     On January 23, 2009, Mindy and Rhea Isaacs filed suit against Northern Metals and American Iron based on Held's alleged promises of continued employment.

4

25.   Northern Metals and American Iron resolved the lawsuit filed against them by Mindy and Rhea Isaacs by way of a payment of $153,000 to Mindy and Rhea Isaacs.

### Count I – Breach of Fiduciary Duty (Duty of Loyalty)

26.   Plaintiff incorporates the allegations in all preceding paragraphs as though fully set forth herein.

27.   Held was an officer and manger of Northern Metals.  As such, he owed certain fiduciary duties to Northern Metals, including the duty of loyalty that he act in good faith and in the best interest of Northern Metals.

28.   Held acted in bad faith by the conduct described herein, including his making unauthorized promises of continued employment to Mindy and Rhea Isaacs, and in failing to disclose his promises of continued employment to Mindy and Rhea Isaacs to the decision makers and members of Northern Metals.

29.   Held acted in his own self-interest and against Northern Metals' interest in making unauthorized promises of continued employment to Mindy and Rhea Isaacs and failing to disclose those promises because he stood to benefit from the sale of American Iron to Northern Metals.

30.   As a direct result of Held's breach of fiduciary duty, Northern Metals has incurred, and will continue to occur, damages in excess of $153,000.

### Count II – Breach of Fiduciary Duty (Duty of Care)

31.   Plaintiff incorporates the allegations in all preceding paragraphs as though fully set forth herein.

32.   Held was an officer and manager of Northern Metals.  As such, he owed certain fiduciary duties to Northern Metals, including the duty of care that he disclose all material facts to Northern Metals in connection with certain transactions.

5

33.     Held had an obligation to disclose his promises of continued employment to Mindy and Rhea Isaacs to the decision makers and members of Northern Metals in order to allow them to make an informed decision regarding the acquisition of American Iron.

34.     Held failed to disclose all material facts to the decision makers and members of Northern Metals, including his promise of continued employment to Mindy and Rhea Isaacs.

35.     As a direct result of Held's breach of fiduciary duty, Northern Metals has incurred, and will continue to occur, damages in excess of $153,000.

### Count III – Fraud

36.     Plaintiff incorporates the allegations in all preceding paragraphs as though fully set forth herein.

37.     Held did not tell Northern Metals about his promises of continued employment to Mindy and Rhea Isaacs.

38.     As an officer and manager of Northern Metals, Held had a duty to disclose his promises of continued employment to Mindy and Rhea Isaacs to Northern Metals.

39.     Held knowingly and deliberately concealed and failed to tell Northern Metals about his promises of continued employment to Mindy and Rhea Isaacs.

40.     Held intended to induce Northern Metals' reliance on his concealment and induce Northern Metals into closing its acquisition of American Iron.

41.     Held's failure to disclose his promises of continued employment to Mindy and Rhea Isaacs caused Northern Metals to approve the sale of American Iron to Northern Metals without knowing of the promises of continued employment to Mindy and Rhea Isaacs.

42.     As a direct result of Held's fraud, Northern Metals has incurred, and will continue to occur, damages in excess of $153,000.

6

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Northern Metals, LLC respectfully requests:

1.     Judgment in favor of Plaintiff and against Defendant Jamie Held for damages in excess of $153,000;

2.     Disgorgement of Defendant Jamie Held's salary and benefits during the time of his breach of fiduciary duty to Northern Metals;

3.     An award of costs, interest, attorneys' fees as allowed by law; and

4.     All other relief deemed just and equitable by this Court.

Dated: September   2 , 2009              **YOST & BAILL, LLP**

By

Daniel W. Boerigter (ID #243784)
*Attorneys for Plaintiff*
2050 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
612.338.6000 – telephone
612.344.1689 – facsimile
dboerigter@yostbaill.com

Of counsel:

Jeffrey A. Soble
Steven M. Gerenraich
Anna R. Downs-Temple
FOLEY & LARDNER LLP
321 North Clark Street
Chicago, IL 60654-5313
312.832.4500 Telephone
312.832.4700 Facsimile

7

CHI2_2115753.1